UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                                    Chapter 7

     VLADIMIR REVISS,                              Case No. 19-44155

                Debtor.

------------------------------------------------------------x

MEMORANDUM OPINION FOLLOWING THE COURT'S ORAL DECISION
ON THE CHAPTER 7 TRUSTEE'S MOTION FOR AUTHORIZATION TO DISBURSE
<u>THE DEBTOR'S PERSONAL INJURY EXEMPTION TO THE DEBTOR</u>

*Appearances:*

    Robert Nosek, Esq.                 Raul J. Sloezen, Esq.
    Certilman Balin Adler & Hyman, LLP    Law Offices of Raul J. Sloezen
    90 Merrick Avenue               18 Hasbrouck Avenue
    East Meadow, NY 11554           Emerson, NJ 07630
    *Attorneys for Chapter 7 Trustee*       *Attorneys for Green Tree Case Funding, LLC*
     Richard J. McCord

May 6, 2021

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

### **Introduction**

The matter comes before this Court upon the motion of the Chapter 7 Trustee Richard J. McCord (the "Trustee") for several forms of relief arising from the settlement of a personal injury claim in the Chapter 7 bankruptcy case of Vladimir Reviss, including approval of the settlement under Bankruptcy Rule 9019 and authorization to disburse to Mr. Reviss his claimed exemption in the proceeds of a personal injury action in the amount of $39,040 (the "Exemption Motion").  ECF No. 33.

Only one aspect of the relief sought by the Trustee is contested – the request for authorization to pay Mr. Reviss his claimed exemption.  That relief is opposed by Green Tree Case Funding, LLC ("Green Tree"), which filed a secured proof of claim in the amount of $49,560 based on a series of litigation finance agreements that it entered into with Mr. Reviss.

Green Tree argues that it, rather than Mr. Reviss, is entitled to receive the exempt funds based on a pre-petition agreement between it and Mr. Reviss in which, Green Tree asserts, Mr. Reviss assigned a portion of the future proceeds of his personal injury action to Green Tree in exchange for a series of payments by Green Tree to him of $2,500, $2,500, $7,500, and $7,500, totaling $20,000.  Green Tree Opp. Mem., at 2-3, 5, ECF No. 40.

The Court held two hearings on the Trustee's Exemption Motion, at which the Trustee and Green Tree appeared and were heard, and Mr. Reviss did not appear.  At the initial hearing on February 16, 2021, and without objection, the Court approved the personal injury settlement in the amount of $75,000, and on February 22, 2021, the Court entered an order to that effect. The Court also heard initial argument on Green Tree's objection, and set a schedule for Green Tree to file supplemental opposition.  Separately, the Court heard the Trustee's motion for an

award of attorneys' fees of $25,000 and expenses of $1,864.50 to the Trustee's personal injury counsel.  ECF No. 34.  Without objection, that motion was granted, and on February 22, 2021, the Court also entered an order to that effect.

No further opposition was filed, and on April 6, 2021, the Court held a continued hearing on the Trustee's Exemption Motion and Green Tree's objection.  At the conclusion of the April 6 hearing, the Court rendered an oral decision overruling Green Tree's objection and authorizing the Trustee to disburse the full claimed exemption amount to Mr. Reviss.  April 6, 2021 Tr. at 33:1-34:17, ECF No. 51.  An order to that effect was entered on April 9, 2021.  Order Authorizing the Trustee To Disburse the Debtor's Claimed Exemption in the Amount of $39,040.00 (the "April 9 Order"), ECF No. 53.

In light of the significance of the issues presented by the Trustee's Exemption Motion and Green Tree's objection, which lie at the intersection of fundamental principles of bankruptcy law and state law addressing litigation finance, the Court issues this memorandum decision to set forth and elaborate on the findings of fact and conclusions of law and reasoning that support its April 6, 2021 oral decision and April 9, 2021 Order.  The Court's underlying rulings and order have not changed.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O), and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## Background

Based on the parties' filings and the entire record of this case, the following facts are not in dispute.

*Mr. Reviss's Personal Injury Action and Agreements with Green Tree*

On or about January 23, 2019, prior to filing for bankruptcy relief, Mr. Reviss commenced a personal injury action in the New York State Supreme Court, Kings County. Beginning some two months earlier, before that action was filed, on November 20, 2018, December 3, 2018, and January 22, 2019, and once again some two months thereafter, on March 29, 2019, Mr. Reviss and Green Tree entered into a total of four "Case Investment Agreements" (the "Agreements").

As set forth in the Agreements, Green Tree advanced Mr. Reviss a total of $20,000 in exchange for his promise to repay Green Tree, at the conclusion of the personal injury action, the amount that was advanced, plus origination and underwriting fees of $4,780, and interest at a rate of 3.5 percent per month, compounded monthly, on the advanced sum and fees.  Proof of Claim No. 10, Parts 3-6 (Agreements) ¶ 4.  As also set forth in the Agreements, repayment was contingent upon Mr. Reviss's success in the personal injury action.  That is, if he did not recover, he would owe nothing to Green Tree – but if he did recover, he would be required to pay Green Tree in full before he would receive any of the proceeds from the action.

The parties to the Agreements expressly acknowledged that the transactions were not assignments of part of Mr. Reviss's personal injury claim, but rather assignments of a portion of the proceeds of that claim.  In particular, the Agreements each state that "[the Debtor] and [Green Tree] acknowledge and agree that this transaction is not to be constructed as an assignment of part of a cause of action but rather only as assignment of a portion of the proceeds of the [personal injury] Claim."  Proof of Claim No. 10, Parts 3-6 (Agreements) ¶ 11.

The Agreements also include a representation by Mr. Reviss that he did not intend to file

for bankruptcy at any time in the future, and that if he did, he would describe the assigned

proceeds as an asset of Green Tree and not as his debt or obligation to Green Tree.  Specifically,

the Agreements state:

> In the event [the Debtor] commences or has commenced . . . any case or other
> proceeding pursuant to any bankruptcy, insolvency, or similar law, [Mr. Reviss]
> shall cause the interest of [Green Tree] in the contingent proceeds of the Claim to
> be described as an asset of [Green Tree] in any oral or written communication,
> including, but not limited to, any schedule or other document, made or filed in
> connection with any such case or proceeding.  In no event [shall Mr. Reviss]
> permit the interest of [Green Tree] in the proceeds of the Claim to be described as
> a debt or obligation of [Mr. Reviss] to [Green Tree] in any such communication.

Proof of Claim No. 10, Parts 3-6 (Agreements) ¶ 20(b).  In addition, the Agreements state that

"[Mr. Reviss] is not now subject to any bankruptcy proceeding" and "does not intend to file for

bankruptcy at any time in the future."  Proof of Claim No. 10, Parts 3-6 (Agreements) ¶ 20(a).

And finally, in the Agreements, Mr. Reviss granted "a security interest" in the assigned proceeds

and signed four "Claimant Lien in Favor of Green Tree Case Funding, LLC and Attorney

Acknowledgement" (the "Lien Agreements").  Proof of Claim No. 10, Parts 3-6 (Agreements)

pp. 8-9.[1]

*Mr. Reviss's Chapter 7 Bankruptcy Case*

On July 8, 2019, just over three months after entering into the fourth Agreement with

Green Tree, Mr. Reviss filed a voluntary petition for relief under Chapter 7 of the Bankruptcy

Code.  He scheduled his personal injury claim on Schedule A/B of his bankruptcy petition.  And

---

[1]  The Court notes that Section 6 of each of the Lien Agreements states that the Lien Agreements
and the Agreements themselves were to be notarized, but a review of these documents does not
indicate that this occurred.  In addition, the Agreement dated November 20, 2018 appears to be
initialed but not signed by Mr. Reviss.  This was not raised by the parties or addressed by the
Court in its oral decision and will not be addressed further here.

4

he claimed the federal personal injury and "wild card" exemptions, totaling $39,040, on

Schedule C of his bankruptcy petition, pursuant to Bankruptcy Code Sections 522(d)(11)(D) and

522(d)(5) (the "Exemption").  Sched. C at 2, ECF No 1.  Finally, on Schedule E/F, Mr. Reviss

listed Green Tree as a holder of an unsecured claim in the amount of $20,000, and indicated that

the claim was not contingent, liquidated, and undisputed.  Sched. E/F at 2, ECF No. 1.  Mr.

Reviss did not specify the nature of the claim, nor did he indicate that Green Tree held an interest

in any of his present or future property.

On February 18, 2020, Green Tree filed a proof of claim in the total amount of $49,560

(the "Claim") based on the "[a]ssignment of proceeds of personal injury case."  Proof of Claim

No. 10.  Green Tree stated that the Claim had a fixed annual interest rate of 51.11 percent and

was secured by "Personal Injury Proceeds" based on an "Attorney Acknowledgement."  *Id*.  In

support of the claimed amount and the claim status, Green Tree attached the four Agreements

and Lien Agreements, as well as a document titled "Contract Calculator" breaking down the

amount owed.  *Id*.[2]

*The Trustee's Motions and Green Tree's Response*

On November 12, 2020, this Court authorized the Trustee to retain Certilman Balin Adler

& Hyman, LLP as his counsel and the Law Office of Yuriy Prakhin, P.C. as his personal injury

counsel in connection with Mr. Reviss's pending personal injury action.  Some five weeks later,

---

[2]  At least one New York court has observed that "the effects of these types of institutions on the legal system and the judiciary need to be examined in further detail in order to determine whether this type of business practice is more of a benefit or detriment to society as a whole." *Echeverria v. Est. of Lindner*, 801 N.Y.S.2d 233, 2005 WL 1083704, at *9 (N.Y. Sup. Ct. 2005), *judgment entered sub nom. Echeverria v. Lindner*, 2005 WL 6050781 (N.Y. Sup. Ct. 2005).  The question of the enforceability of the Agreements was not raised by the parties or addressed by the Court in its oral decision and will not be addressed further here.

on December 21, 2020, the Trustee filed this motion seeking permission to settle the personal

injury action for $75,000 and to disburse funds equal to the claimed Exemption to Mr. Reviss.

On the same day, the Trustee also filed an application to reclassify Green Tree's Claim

from a secured claim to an unsecured one (the "Reclassification Application").  In that

application, the Trustee argued that Green Tree's cash advances to Mr. Reviss did not become

claims secured by liens until after Mr. Reviss filed his bankruptcy petition.  The Trustee pointed

to the bankruptcy court's ruling under similar circumstances in *In re Andrade*, 2010 WL

5347535 (Bankr. E.D.N.Y. Dec. 21, 2010), and stated that "pursuant to this decision, the claim

filed by Green Tree, filed as secured . . . must be reclassified as an unsecured claim and dealt

with as a part of the usual claims administration process."  Reclass. App. ¶ 9, ECF No. 36.

Green Tree opposed the Trustee's Exemption Motion to the extent that it sought to pay

Mr. Reviss his exemption, and also opposed the Reclassification Application, on substantially

similar grounds.  Green Tree asserted that based on the Agreements, it was entitled to be paid in

full – and at the very least, it was entitled to be paid Mr. Reviss's Exemption.  Green Tree argued

that while the facts in *In re Andrade* are "similar to those in the present case," that case could be

distinguished from the circumstances here because, among other reasons, "the issue is more

'difficult' than characterized," and the decision in the *Andrade* case is "incorrect" as here, Mr.

Reviss "had already assigned to Green Tree [his] equitable claim to the proceeds of the personal

injury case" pre-petition, and thus the proceeds "were never part of the bankruptcy estate."

Green Tree Opp. Mem. at 11-12.

With respect to its interest in Mr. Reviss's Exemption, Green Tree also argued that it was

entitled to receive the full Exemption, and to have its claim treated as secured, because it had an

equitable lien on the settlement proceeds.  Green Tree asserted that, as Mr. Reviss had assigned

his equitable claim to the future proceeds of his personal injury action to it before filing his bankruptcy case, he no longer held an interest in those proceeds when the case was filed, and as a result, the proceeds did not become property of his bankruptcy estate.  Instead, it argued, as a result of its equitable lien, they were the property of Green Tree.

Green Tree also argued that the Court should find that a constructive trust had been created, in order to prevent the unjust enrichment of the Trustee and Mr. Reviss's other creditors. In support of this argument, Green Tree pointed to *Committee of Unsecured Creditors v. Gottesman Company* (*In re Rama Group of Companies*), 2002 WL 1012974 (W.D.N.Y. May 6, 2002), where the court held that a pre-petition agreement to pay a broker's commission in the event that a transaction occurred created a constructive trust in favor of the broker.  Green Tree Opp. Mem. at 15.  And Green Tree argued that, as the bankruptcy court found in *Bulan v. Pre-Settlement Finance, LLC* (*In re Minor*), 482 B.R. 80 (Bankr. W.D.N.Y. 2012) ("*Minor II*"), the debtor's pre-petition assignment of the proceeds of a personal injury claim meant that the debtor's state law exemption belonged to the litigation finance company, not to the debtor. Green Tree Opp. Mem. at 19.

Green Tree also cited to several cases holding that the bankruptcy estate succeeds only to the interest that the debtor held at the time of the petition, so that if the debtor held mere legal title, and not an equitable interest, in property, then the bankruptcy estate likewise would include only the legal title, and not the equitable interest.  Green Tree Opp. Mem. at 13 (citing *In re South Side House, LLC*, 474 B.R. 391,402 (Bankr. E.D.N.Y. 2012) and *Sanyo Elec., Inc. v. Howard's Appliance Corp.* (*In re Howard's Appliance Corp.*), 874 F.2d 88, 93 (2d Cir. 1989)).

While these motions were pending, the Trustee and Green Tree struck a deal, and resolved their disagreements in part.  In full settlement of the Reclassification Application, Green

Tree agreed not to oppose the bankruptcy estate retaining the non-exempt funds, in the amount of $9,095.50, and to waive any claim it had to those funds, and the Trustee agreed to take no position on Green Tree's objection to the Trustee's request to pay the Exemption, in the amount of $39,040, to Mr. Reviss. The parties' agreement was memorialized in a Stipulation of Settlement filed on February 15, 2021. And the Court approved and "so-ordered" the Stipulation of Settlement on April 8, 2021.

*The February 16 and April 6 Hearings and the Court's Oral Decision*

On February 16, 2021, this Court held initial hearings on the Exemption Motion and the Reclassification Application, at which the Trustee and Green Tree appeared and were heard. Without objection, the portion of the Trustee's motion seeking approval of the Settlement was granted, and an order to that effect was entered on February 22, 2021. The Court adjourned the portion of the Trustee's motion seeking authorization to pay the Exemption to Mr. Reviss, and permitted Green Tree to supplement its opposition to that relief, initially by March 9, 2021, and upon Green Tree's request, by March 10, 2021, "without prejudice to a further request for an extension if necessary." Letter Order Endorsement, ECF. No. 50. Ultimately, Green Tree did not file supplemental opposition.

On April 6, 2021, the Court held continued hearings on the Trustee's Exemption Motion and Reclassification Application, at which the Trustee and Green Tree appeared and were heard. At that hearing, the Trustee confirmed that he did not seek any further relief with respect to the Reclassification Application, in light of the Stipulation of Settlement, and the Court marked that matter off the calendar as settled, as reflected by the "so-ordered" text order on April 6, 2021. The Trustee also advised the Court that, consistent with the Stipulation of Settlement, the Trustee would no longer take a position with respect to the relief sought in the Exemption Motion. April

6, 2021 Tr. at 6:6-20.  And Green Tree confirmed that it did not seek to supplement its opposition to the Exemption Motion and the request to pay the Exemption to Mr. Reviss, as Green Tree's position was fully addressed in its objection papers.  April 6, 2021 Tr. at 4:23-5:5.

Upon the record made by the parties at the February 16 and April 6 hearings, upon their written submissions, and based upon the entire record, the Court overruled Green Tree's objections to the Trustee's Exemption Motion and, as set forth on the record of the April 6 hearing, the Court "authorized [the Trustee] to disburse to the Debtor, Vladimir Reviss, his claimed exemption in the amount of [$39,040], pursuant to Bankruptcy Code Section 522(d)(5) and (d)(11)(D)."  April 9 Order, at 2.

### Discussion

At the outset, it is worth noting what the Court decides – and what the Court does not decide – here.  The validity of Mr. Reviss's claimed exemptions is not disputed, nor is his entitlement to a discharge in his Chapter 7 bankruptcy case.  Just the same, the Green Tree Claim has not been challenged.  The sole matter to be determined is whether the Trustee should pay Mr. Reviss's exemption in the proceeds of his personal injury action to Mr. Reviss, as the exempt portion of funds that are property of his Chapter 7 bankruptcy estate, or to Green Tree, because – in substance – either those funds never became part of the Chapter 7 estate in the first place, or because Mr. Reviss validly assigned them to Green Tree before he filed this case.

The issues raised by the Trustee's Exemption Motion are informed by several of the fundamental principles of bankruptcy law and the bankruptcy system.  These include property of the estate and in that context the operation of liens and assignments, and a debtor's right to claim exemptions in property of the estate.  The Court addresses each of these in turn.

*Property of the Estate*

The filing of a Chapter 7 petition creates a bankruptcy estate, consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is widely recognized by courts and commentators alike that the definition of property of the estate is broad indeed. As this Court and others have observed, property of the estate encompasses "'every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative,'" and all of these interests are "'within the reach of [Section] 541.'" *Geltzer v. Soshkin* (*In re Brizinova*), 588 B.R. 311, 326 (Bankr. E.D.N.Y. 2018) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008)). And as one respected commentator has observed, "the scope of section 541(a)(1) is so broad and all encompassing," and "the underlying theory of section 541(a)(1) is to bring into the estate all interests of the debtor in property as of the date the case is commenced." *5 Collier on Bankruptcy* ¶ 541.03 at 541-20, 541-21 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2020).

Nevertheless, despite the recognized breadth of the term "property of the estate," it does have limitations. In particular, Section 541(a) "'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case'" or grant the trustee "greater rights than the debtor had on the date of filing the petition." *Mendelson v. Gonzalez* (*In re Gonzalez*), 559 B.R. 326, 330 (Bankr. E.D.N.Y. 2016) (quoting *Sharp v. Dery*, 253 B.R. 204, 209 (E.D. Mich. 2000)). And this means that if, as of the petition date, the debtor holds mere legal title to property and not an equitable interest in that property, the property "'becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.'" *Krohn v. Burton* (*In re Swift*), 496 B.R. 89, 96 (Bankr. E.D.N.Y. 2013) (quoting 11 U.S.C. § 541(d)).

In other words, the estate cannot "inherit" or "acquire" more than the debtor owned as of the petition date. "Indeed, the Supreme Court has declared that, while the outer boundaries of the bankruptcy estate may be uncertain, 'Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.'" *Howard's Appliance Corp.*, 874 F.2d at 93 (quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983)).

Of course, bankruptcy law does not exist in a vacuum in defining property of the estate. Rather, a significant role in determining the scope of the property of the estate is played by state law. Courts recognize that even though "federal law determines whether a debtor's interest in property is property of the bankruptcy estate, rights and property interests are created and defined by state law." *In re Gonzalez*, 559 B.R. at 330 (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)). As a consequence, in order to determine the nature of Mr. Reviss's interest in his pre-petition personal injury action upon the filing of his bankruptcy case – legal or equitable or undivided – and therefore, the nature of the estate's interest in the settlement proceeds from that action, it is necessary also to consider questions of state law, including the law of New York.[3]

---

[3]  The Court observes that Section 25 of the Agreements provides that "the laws of the State of New Jersey . . . control the interpretation of this Agreement and all terms, conditions, relationships, and duties of the parties." Proof of Claim No. 10, Parts 3-6 (Agreements) ¶ 25. Neither the Trustee nor Green Tree have addressed the question of choice of law, and each addresses the law of New York, not New Jersey, in their submission.

For the sake of a complete record, the Court notes that it appears that the application of New Jersey law, as interpreted by the New Jersey bankruptcy court and state courts, would not change the outcome here. *See, e.g.*, *In re Colombraro*, 230 B.R. 673, 676 (Bankr. D.N.J. 1999) (citing *Weller v. Jersey City, H. & P. St. Ry. Co.*, 61 A. 459 (N.J. 1905) and *Goldfarb v. Reicher*, 171 A. 149, 150 (N.J. Sup. Ct. 1934), *aff'd*, 174 A. 507 (N.J. 1934)) (observing that under New Jersey law, "a prejudgment assignment of part of the proceeds of a personal injury tort claim is void as a matter of law"). That is, under New Jersey law, Mr. Reviss's assignment of his personal injury settlement proceeds could well be void.

Applying New York law, courts in this jurisdiction recognize that pre-petition personal injury actions and any proceeds of those actions "constitute[] an interest in property held by the Debtor at the commencement of the case and [are] accordingly property of the estate." *Greene v. Schmukler* (*In re De Berry*), 59 B.R. 891, 895 (Bankr. E.D.N.Y. 1986) (citations omitted). *See Green v. Mucelli* (*In re Mucelli*), 21 B.R. 601, 604 (Bankr. S.D.N.Y. 1982) (concluding that, under newly-adopted Bankruptcy Code Section 541, "proceeds of a personal injury action constitute an equitable interest in property which was held by [the debtor] at the commencement of the [bankruptcy] case [and] are property of the Estate"). And this includes a debtor's exemption – as one bankruptcy court observed, "until this Court exempts [the Debtor's] personal injury claim, it is property of the Estate." *In re Mucelli*, 21 B.R. at 603 (citing *Leech v. Nichols* (*Matter of Nichols*)), 4 B.R. 711, 713 (Bankr. E.D. Mich. 1980)). "Once property becomes part of the bankruptcy estate, the debtor may claim that certain interests in property are exempt from the debtor's estate." *Rockstone Cap., LLC v. Bub* (*In re Bub*), 502 B.R. 345, 358 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Bub v. Rockstone Cap., LLC*, 516 B.R. 685 (E.D.N.Y. 2014) (citing 11 U.S.C. § 522) (examining whether the debtor's conduct in claiming an exemption in a vehicle was a basis for denial of discharge).

One piece of this picture is the rule that the common law forbids the assignment of a personal injury cause of action. New York State courts agree that, simply stated, "a cause of action for personal injury may not be assigned." *Grossman v. Schlosser*, 19 A.D.2d 893, 894, 244 N.Y.S.2d 749, 750 (N.Y. App. Div. 2d Dep't 1963) (citing *Williams v. Ingersoll*, 89 N.Y. 508, 521 (N.Y. 1882)). *See* 6A N.Y. Jur. 2d, Assignments, § 21 (stating that "[u]nder the General Obligations Law, as well as at common law, a claim to recover damages for a personal injury cannot be assigned") (citations omitted); *In re Minor*, 443 B.R. 282, 286 (Bankr.

W.D.N.Y. 2011) ("*Minor I*") (citing *Juba v. General Builders Supply Corp.*, 7 N.Y.2d 48, 53 (N.Y. 1959)) (same).

But New York law permits assignment and transfer of the proceeds of a personal injury claim. As one New York court recognized, "the assignment of the *proceeds* of such a cause of action, prior to its settlement or adjudication, was valid and effectual as an equitable assignment against the assignor and his attaching creditor." *Grossman*, 19 A.D.2d at 893-94, 244 N.Y.S.2d at 750-51. *See In re Mucelli*, 21 B.R. at 603 (citing cases). And under these circumstances, the assignee acquires an equitable lien, while the assignor retains the legal interest in the cause of action. *See Minor II*, 482 B.R. at 84 (citing *Williams v. Ingersoll*, 89 N.Y. 508, 519 (N.Y. 1882)) (holding that, as a consequence of the assignment of litigation proceeds, the litigation funding company acquired an equitable lien, whereas the debtor retained the legal interest in the cause of action).

At the same time, courts agree that "[t]he absence of an existing judgment at the time of the purported assignment" plays an essential role in the analysis. *Dunlap-McCuller v. Riese Org.*, 1995 WL 422141, at *1 (S.D.N.Y. July 18, 1995), *amended by* 1995 WL 442024 (S.D.N.Y. July 25, 1995) (citing *Okin v. Isaac*, 79 F.2d 317 (2d Cir. 1935)). In particular, "[t]he assignment of the future proceeds of a lawsuit operates as a future lien which only comes into existence when a judgment is entered," and that lien "does not relate back to the date of the assignment." *In re Andrade*, 2010 WL 5347535 at *2 (citations omitted). "[L]ike the assignment of accounts receivable where the assignor has no existing contract under which such accounts are to arise, the assignment of a right to receive income contingent upon the occurrence of a future event, does not convey a present interest to the assignee." *Don King Prods., Inc. v.*

*Thomas*, 945 F.2d 529, 534 (2d Cir. 1991) (citing *Central State Bank v. New York*, 341 N.Y.S.2d 322, 324 (N.Y. Ct. Cl. 1973)).

Both state and federal courts confirm this rule.  As one New York court observed, "[t]here is no doubt that the assignment of a truly future . . . interest does not work a present transfer of property.  It does not because it cannot; no property yet exists."  *Stathos v. Murphy*, 26 A.D.2d 500, 503, 276 N.Y.S.2d 727, 730 (N.Y. App. Div. 1st Dep't 1966), *aff'd*, 19 N.Y.2d 883 (N.Y. 1967))  And as the Second Circuit noted, "because the assignment 'operate[s] only as an agreement to assign the judgment or its proceeds to be acquired in the future,' the assignment [is] merely an executory agreement."  *Dunlap-McCuller*, 1995 WL 422141 at *1 (quoting *Klar v. Bachrach* (*In re Modell*)), 71 F.2d 148, 149 (2d Cir. 1934).

Another piece of the picture deserves note.  Where a debtor's property is held in trust for another, including pursuant to a constructive trust, then it may be outside the scope of property that is available for distribution to creditors.  As the Second Circuit has observed, "any property that the debtor holds in constructive trust for another is excluded from the estate pursuant to [Section] 541(d)."  *Flanagan v. Mangan* (*In re Flanagan*), 503 F.3d 171, 180 (2d Cir. 2007).  And as one bankruptcy court has noted, this result "highlights an inherent tension between constructive trust law and bankruptcy law that requires the Court to proceed with caution in considering" such a claim.  *In re Fetman*, 567 B.R. 702, 705 (Bankr. E.D.N.Y. 2017) (*citing Superintendent of Ins. for N.Y. v. Ochs* (*In re First Cent. Fin. Corp.*), 377 F.3d 209, 217 (2d Cir. 2004)).  For these reasons, "a constructive trust should be imposed only if there is 'a substantial reason to do so.'"  *In re Fetman*, 567 B.R. at 706 (quoting *Geltzer v. Balgobin* (*In re Balgobin*), 490 B.R. 13, 21 (Bankr. E.D.N.Y. 2013)).  Put another way, this is, in substance, an unusual remedy, for unusual circumstances.

Four elements must be shown to establish a constructive trust under New York law. As the Second Circuit has recognized, these are "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d at 212 (quoting *United States v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995)).

These elements may be viewed as "guideposts," and are "not to be rigidly applied." *In re Fetman*, 567 B.R. at 706. At the same time, "the fourth criterion, 'unjust enrichment,' has been deemed to be the most important, as the purpose of the constructive trust is prevention of unjust enrichment." *In re Fetman*, 567 B.R. at 706 (internal quotation marks and citation omitted).

And notably, "[w]ithin this Circuit, a constructive trust has been imposed against a bankruptcy estate *only* where a court has found some pre-petition unjust conduct by the debtor relating to the subject property." *In re Fetman*, 567 B.R. at 706 (citing *In re Balgobin*, 490 B.R. at 23). As a consequence, "a constructive trust should not be imposed merely to give effect to a prior agreement, but instead should be reserved for situations in which a party's misconduct gives rise to his unjust enrichment." *In re Fetman*, 567 B.R. at 706 (citing *In re First Cent. Fin. Corp.*, 377 F.3d at 216).

Here, Green Tree does not show that there has been misconduct by Mr. Reviss. At most, it argues, a constructive trust is appropriate is because if Mr. Reviss receives his Exemption, he would "not only keep that $20,000.00 [advanced by Green Tree]," but "also receive an additional $39,040.00," and the Trustee and other creditors would "unjustly benefit from the $20,000.00 that Green Tree provided to [the Debtor], while, in all likelihood, Green Tree would receive nothing." Green Tree Opp. Mem. at 16.

But this argument does not distinguish this case from any other situation where a debtor receives his or her exemption in the proceeds of a personal injury claim in the course of a trustee's administration of a Chapter 7 bankruptcy case.  Every exemption reduces the amounts available to pay creditors, but that is not unjust enrichment – it is the ordinary operation of the bankruptcy process.  And it does not demonstrate, or even suggest, "bad faith or malfeasance of any kind" by Mr. Reviss, the Trustee, or any other party.  *In re First Cent. Fin. Corp.*, 377 F.3d at 215.

\*            \*            \*

Here, it is clear from the record that the Mr. Reviss's personal injury action was well within the scope of "'every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative,'" and therefore, "'within the reach of [Section] 541'" when he filed this bankruptcy case.  *In re Brizinova*, 588 B.R. at 326 (quoting *Chartschlaa*, 538 F.3d at 122).

And this conclusion is not altered by the fact that Mr. Reviss made a pre-petition assignment of an interest in the proceeds of that action to Green Tree in the Agreements, for several reasons.  Courts agree that a debtor's interest in a pre-petition personal injury action and the proceeds of such an action, including a debtor's claimed exemptions in those proceeds, become property of the debtor's estate when a bankruptcy case is filed.  *See In re Mucelli*, 21 B.R. at 603.  This is consistent with the common law rule that a personal injury cause of action cannot be assigned.  *See Grossman*, 19 A.D.2d at 894, 244 N.Y.S.2d at 750 (citing *Williams*, 89 N.Y. at 521) (noting that the New York Court of Appeals acknowledged the existence of the common-law rule that "a cause of action for personal injury may not be assigned").  While New York law permits the assignment of the proceeds of a personal injury claim, that assignment

16

provides the assignee – here, Green Tree – with an equitable interest or lien, and leaves the assignor – here, Mr. Reviss – with the legal interest in his claim.

But what does this mean in the context of a bankruptcy case?  Here, as in so many contexts, timing is key.  As the bankruptcy court observed in *In re Andrade*, "[t]he assignment . . . operates as a future lien which only comes into existence when a judgment is entered."  *In re Andrade*, 2010 WL 5347535, at *2.  Viewed another way, as the Second Circuit found, "the assignment of a right to receive income contingent upon the occurrence of a future event, does not convey a present interest to the assignee."  *Don King Prods., Inc.*, 945 F.2d at 534.  These determinations are grounded in basic principles of New York law.  As one New York appellate court noted, "the assignment of a truly future . . . interest does not work a present transfer of property.  It does not because it cannot; no property yet exists."  *Stathos*, 26 A.D.2d at 503, 276 N.Y.S.2d at 730.

And so here.  When Mr. Reviss filed his bankruptcy case, his personal injury case – and the prospect of proceeds of that case – became property of his bankruptcy estate.  Green Tree's asserted equitable interest or lien on the proceeds did not diminish that property, because those proceeds did not yet exist, and no transfer of property had yet occurred.

Finally, it is clear from the record that it would not be appropriate to impose a constructive trust on any portion of the proceeds of Mr. Reviss's personal injury action.  The remedy of a constructive trust is a tool to prevent unjust enrichment, and none has been shown.  And separately, a constructive trust is appropriate only in those circumstances where a party's misconduct is part of the picture – and here again, no misconduct has been shown.

*The Debtor's Exemptions*

Another significant consideration is the role of an individual debtor's right to claim exemptions in certain kinds of property, up to designated state or federal limits, in the context of a bankruptcy case. "Debtors domiciled in New York have the option of exempting from property of the estate either the property identified in § 522(d) or property which is exempt under New York law." *In re Crutch*, 565 B.R. 36, 38 (Bankr. E.D.N.Y. 2017) (citing 11 U.S.C. § 522(b) and *Santiago-Monteverde v. Pereira* (*In re Santiago-Monteverde*), 24 N.Y.3d 283 (N.Y. 2014)).

When a debtor claims an exemption, that "exempt property is not available to pay the claims of certain creditors during the bankruptcy case and, with limited exceptions, after the bankruptcy case as well." *In re Nuara*, 607 B.R. 116, 122 (Bankr. E.D.N.Y. 2019). As the Supreme Court has stated, "'every asset the [Bankruptcy] Code permits a debtor to withdraw from the estate is an asset that is not available to . . . creditors.'" *Clark v. Rameker*, 573 U.S. 122, 129 (2014) (quoting *Schwab v. Reilly*, 560 U.S. 770, 791 (2010)). As such, "property claimed as exempt is excluded from the bankruptcy estate and kept by a debtor even though creditors are not paid." *In re Nuara*, 607 B.R. at 123.

A debtor's ability to exempt property is among the most essential features of the bankruptcy system, and it serves a key role. As the Supreme Court found, "exemptions serve the important purpose of protect[ing] the debtor's essential needs" while "effectuat[ing] a careful balance between the interests of creditors and debtors." *Clark*, 573 U.S. at 129 (internal quotation marks and citation omitted). And as the bankruptcy court noted in *In re Nuara*, "[t]he rationale for protecting certain property from creditor claims is to provide a debtor with some comfort that she will not be impoverished and emerge from bankruptcy with a fresh start," which lies "at the heart of the bankruptcy system." *In re Nuara*, 607 B.R. at 123.

18

Bankruptcy Code Section 522(d) sets forth a series of federal exemptions that debtors may use, and two are relevant to Mr. Reviss's case. These include Section 522(d)(11)(D), which exempts the "debtor's right to receive, or property that is traceable to . . . a payment, not to exceed $25,150, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss" of the debtor or the debtor's dependent. 11 U.S.C. § 522(d)(11)(D). They also include the "wild card" exemption set forth in Section 522(d)(5), which permits a debtor to exempt "[his or her] aggregate interest in any property, not to exceed in value $1,325 plus up to $12,575 of any unused amount of" the federal homestead exemption. 11 U.S.C. § 522(d)(5).

The Supreme Court has recognized that these exemptions are, in effect, entitlements of a debtor in a bankruptcy case. As the Court has stated, "[Section] 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate" – if the debtor "decides to invoke an exemption to which the statute entitles him . . . the court may not refuse to honor the exemption absent a valid statutory basis for doing so." *Law v. Siegel*, 571 U.S. 415, 423-24 (2014). As a consequence, if Mr. Reviss has properly "invoke[d] an exemption" that the Bankruptcy Code provides to him with respect to the proceeds of his personal injury action, then the proceeds covered by his exemption are shielded from the reach of his creditors, "absent a valid statutory basis for doing so." *Id.*

Bankruptcy courts have recognized several common themes in addressing these situations. In *In re Andrade*, the court considered these matters in the context of the Chapter 7 cases of two individual debtors. There, each debtor had, prior to filing their bankruptcy case, commenced an action – one a personal injury action and the other a medical malpractice action – and also entered into agreements with litigation finance companies. Pursuant to those

agreements, the companies made payments to the debtors, and the debtors, in turn, assigned a portion of their future interests in the proceeds of their respective actions to the companies.  And in each case, the Chapter 7 trustee entered into a settlement after the bankruptcy cases were filed, and sought court approval of the settlement as well as court authorization to make payments to the litigation finance companies based on their pre-petition agreements with each debtor.

In *In re Andrade*, the bankruptcy court began with the observation that "[t]he assignment of the future proceeds of a lawsuit operates as a future lien which only comes into existence when a judgment is entered."  *In re Andrade*, 2010 WL 5347535, at *2 (citing cases).  The court also found that "[t]he assignee's lien comes into existence only when a judgment is entered or a settlement is reached and the **lien does not relate back to the date of the assignment.**"  *Id*. (emphasis in original) (citing cases).  As a consequence, the proceeds of the debtors' lawsuits "became property of the respective bankruptcy estates when the debtors commenced their bankruptcy cases."  *In re Andrade*, 2010 WL 5347535 at *3.  For the same reasons, the litigation finance companies' claims were "deemed to be unsecured claims" and "shall be dealt with as part of the usual claims administration process."  *Id.*  And having determined that "the claims, if any, are unsecured at best, the Court need[] not reach the issue of whether the [assignments] constitute loans and whether they are subject to New York Usury Laws."  *Id*.

In *Minor II*, the bankruptcy court similarly considered the nature of the interest acquired by a litigation finance company and, like the court in *In re Andrade*, concluded that the company acquired "only an equitable lien," and the debtor "retained the legal interest in her causes of action," which then became property of the bankruptcy estate.  *Minor II*, 482 B.R. at 84 (citations omitted).  In addition, the court recognized that these equitable rights "are unenforceable as against the superior legal interest of a bankruptcy estate."  *Id*.

The bankruptcy court also considered the context for the agreement between the parties, and in particular, it analyzed the agreement for its conformity with "guidelines that the attorney general for New York State had accepted as reasonable, under the terms of a settlement between the attorney general and the American Legal Finance Association."  *Minor II*, 482 B.R. at 83.  At the same time, the court found that "[t]o avoid the effects of prohibitions against usury and champerty, [the litigation finance company] created a contorted arrangement that gave [it] nothing more than a minimally enforceable interest in equity."  *Minor II*, 482 B.R. at 85.  As a consequence, it was entitled to "a right to recover litigation proceeds to which [the debtor] may be personally entitled, but not to share in any proceeds that have become non-exempt assets of the bankruptcy estate."  *Minor II*, 482 B.R. at 85-86.  The court concluded that, "because [the debtor] has assigned her interest in proceeds, the trustee shall disburse [the debtor's exemption] to [the litigation finance company]."  *Minor II*, 482 B.R. at 86.

A related series of questions was addressed by the bankruptcy court in a nondischargeability action, *Global Injury Funding, LLC v. Knight* (*In re Knight*), 538 B.R. 191 (Bankr. D. Conn. 2015).  There, the court found that the plaintiff, a litigation finance company, did not establish many of the elements of its nondischargeability claims.

In reaching that conclusion, the court first determined that the advance extended to the debtor by the company was a debt, despite certain statements in the agreement to the contrary. *In re Knight*, 538 B.R. at 202.  The court then considered the statutory definition of "debt" and "claim" and found that "[e]ven though non-bankruptcy law may not recognize a claim absent a breach, the Bankruptcy Code . . . employs a broader approach.  Thus, under the Code, a right to payment need not be currently enforceable in order to constitute a claim."  *In re Knight*, 538 B.R. at 202-03.  The court concluded that "the language and purpose of [Bankruptcy Code] § 101(5)

support the treatment of the monetary sum advanced by the [litigation finance company] as a 'claim,' even though the claim may be 'contingent' in that it is dependent upon a future event – the Debtor's recovery" in the underlying state court action." *In re Knight*, 538 B.R. at 203.

The bankruptcy court also considered the nature of the litigation finance company's equitable lien.  The court concluded that at best, under applicable Connecticut law, the company's "lien on or ownership by assignment of Knight's recovery could not have arisen until the proceeds of the personal injury action had come into existence either upon entry of a judgment or by means of a settlement." *In re Knight*, 538 B.R. at 211.  But since no proceeds had come into existence and, thus, no lien had arisen, the lien could not become perfected in the future proceeds "since for it to do so would violate the automatic stay and ultimately the discharge injunction under [Bankruptcy] Code § 524(a) which has discharged [the debtor's] underlying debt to [the litigation finance company]." *In re Knight*, 538 B.R. at 211-12.  The court concluded that "any lien or assignment of the proceeds of the personal injury action arising under the [litigation finance agreement] is invalid and unenforceable." *In re Knight*, 538 B.R. at 212-13.

Having determined that "[the plaintiff] has failed to satisfy by a preponderance of the evidence multiple, requisite elements of [its nondischargeability claims,]" the court also concluded that "the debt . . . is subject to the [debtor's discharge]." *In re Knight*, 538 B.R. at 212.  And separately, the court concluded that "any lien or assignment of the proceeds of the personal injury action arising under the [litigation finance agreement] is invalid and unenforceable." *In re Knight*, 538 B.R. at 212-13.

*          *          *

Here, it is clear from the record that the Mr. Reviss's pre-petition assignment of a portion of the proceeds of his personal injury action gave Green Tree certain rights, in the nature of an equitable interest or lien, if Mr. Reviss was successful in that action.  But just as Mr. Reviss's interest in his personal injury case effectively changed upon his filing of his Chapter 7 bankruptcy case, Green Tree's interest effectively changed as well.  That case and the prospect of proceeds from it became property of his bankruptcy estate, and Mr. Reviss's ability to exempt property in his bankruptcy case was triggered.

A debtor's exemption is not an unimportant consideration – it has been recognized by the Supreme Court as "protect[ing] the debtor's essential needs" while maintaining "a careful balance between the interest of creditors and debtors." *Clark*, 573 U.S. at 129.  Exemptions are recognized in both state and federal law, and provide debtors "with some comfort that [they] will not be impoverished and emerge from bankruptcy with a fresh start." *In re Nuara*, 607 B.R. at 123.  They are "at the heart of the bankruptcy system." *Id.*  And once they are invoked by a debtor, they are mandatory, not discretionary, and the bankruptcy court does not have discretion to "grant or withhold exemptions" based upon the particular circumstances of an individual case. *Law*, 571 U.S. at 423.

Courts addressing the question of a debtor's exemption and how it affects the rights of a litigation finance company creditor agree, in substance, that the creditor's interest in the proceeds of a debtor's lawsuit is in the nature of a "future lien which only comes into existence when a judgment is entered" in that lawsuit – and not before. *In re Andrade*, 2010 WL 5347535, at *2. *See Minor II*, 482 B.R. at 84 (holding that assignment of future proceeds from personal injury litigation granted the assignee "only an equitable lien"); *In re Knight*, 538 B.R. at 211 (finding that the litigation finance company's lien "could not have arisen until the proceeds of the

personal injury action had come into existence either upon entry of a judgment or by means of a settlement"). Here again, as the Second Circuit found, "the assignment of a right to receive income contingent upon the occurrence of a future event, does not convey a present interest to the assignee." *Don King Prods., Inc.*, 945 F.2d at 534.

Courts also agree that, in substance, the litigation finance company is a creditor, and holds a claim. "[U]nder the [Bankruptcy] Code, a right to payment need not be currently enforceable in order to constitute a claim." *In re Knight*, 538 B.R. at 202-03. But that is all that it holds – not the proceeds, and not a claim secured by those proceeds, but an unsecured claim to be administered in the course of the bankruptcy case. *See In re Andrade*, 2010 WL 5347535, at *3.

Again, and so here. When Mr. Reviss filed his bankruptcy case, his obligations pursuant to the Agreements with Green Tree as to the possible future proceeds of his personal injury action became unsecured claims here. Green Tree did not acquire a lien, or any other special status, in this bankruptcy case other its status as a creditor. And Green Tree's rights under those Agreements did not somehow override the federal and state laws providing Mr. Reviss as a debtor with a right to certain exemptions, or hollow out the policies that courts have recognized that underlie them.

### <u>Conclusion</u>

For the reasons set forth herein and on the record of the April 6, 2021 hearing, and based on the entire record, the Court finds and concludes that the Debtor is entitled to be paid his full claimed exemption in the proceeds of his personal injury action, including his claimed exemption of $25,150, pursuant to Bankruptcy Code Section 522(d)(11)(D), and his claimed exemption of $13,890, pursuant to Bankruptcy Code Section 522(d)(5), totaling $39,040.

As set forth in this Court's Order Authorizing the Trustee to Disburse the Debtor's Claimed Exemption in the Amount of $39,040.00, entered on April 9, 2021, the Trustee is directed to disburse the Exemption in this amount to the Debtor, Vladimir Reviss.



Dated: Brooklyn, New York
      May 6, 2021

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**